The first argued case this morning is No. 21, 1837, Department of Transportation v. Eagle Peak Rock & Paving, Inc., Ms. Akers. Thank you, Your Honors, and may it please the Court. The Court should reverse and remand the Board's decision for failing to review the termination de novo as it's required to do, and in doing so, running afoul in several respects of this Court's longstanding precedent. This case really comes down to one issue with the Board's decision, and that is that the Board didn't answer the question it was supposed to, whether Eagle Peak was in default. Instead, the Board spent pages of its determination critiquing and analyzing the contracting officer's subjective opinions and beliefs and analysis. Let me interrupt you about your first statement. You're saying that they should have reviewed everything de novo with no deference of any sort? That's correct, Your Honor. To the contracting officer, to the Board? Correct. And that's consistent with the CDA, which requires de novo review, and a contracting officer's finding of fact or not binding on subsequent precedent. And it also is consistent with this Court's longstanding precedent. I would point, Your Honors, first and foremost to the Wilner case. The contracting officer's finding of fact, deference to what the Board of Contract Appeals found. You're saying there's no deference to that finding? From this Court's perspective, Your Honor? This Court's perspective, from the perspective of judicial review of an agency decision. This Court would give deference to the Board's findings of fact, but what we're here today on is not a factual challenge, but it's that the Board misapplied this Court's law. So can I just dig a little bit deeper to, now we're talking about just how the Board went about its task, and the CDA, as we've said, means that there is de novo decision-making about determination for default standard determination. How does that de novo standard fit with a bunch of other language in a lot of our opinions, going back to Darwin and through at least one or maybe both of the relevant McDonald-Douglas decisions, about the substantive standard perhaps to be applied in de novo proceedings being a reasonable belief on the part of the contracting officer that timely completion was not assured? That last bit, I'm using the shorthand, okay? Sure. But the reasonable belief part seems to suggest something about the question being decided de novo being something other than simply was reasonable, was timely completion assured? Sure, Your Honor. The standard is, way back to Lisbon, what the reasonable contracting officer would have found, right? But the Board and the trial courts make their own de novo determination as to whether there was a reasonable likelihood of timely completion. And then if they answer in the affirmative, then that supports the contracting officer's reasonable determination. So it is a wholly de novo review. The fact-finding is anew at the Board or the trial court, as this court has explained many times. And there's no deference that's given to the contracting officer's decision. And I would point, Your Honors, for example, to the DC- So let me just try to understand this and how this fits. I understand how the de novo language suggests that the question straight up is whether timely assurance was reasonably assured. And the contracting officer has disappeared from that formulation. On the other hand, is that what you're suggesting? That no matter how- putting aside pretext, true pretext, equivalent to bad faith. We have a bunch of language. Darwin has the language. Others have the language about arbitrariness and capriciousness of the contracting officer's decision. What do you do with that? In the ordinary course, you would say, well, the reasoning, the actual reasoning of the contracting, of the subject of an arbitrary and capriciousness review matters. The Supreme Court recently said that arbitrary and capriciousness means reasonable and reasonably explained. So why isn't that second piece tied to what the contracting officer said? Well, Your Honor, the arbitrary and capricious or abusive discretion standard only comes into play in termination for default reviews if there's no performance-related reason for the termination. So we don't consider- How do we get to that? We get to that, Your Honor, first and foremost, that the CDA requires de novo review. This court has cited- I should say, I am not for a moment doubting, because I've experienced this myself, that there is ground for confusion about the relationship between these two things. And I'm fairly desperately trying to understand how it is properly resolved, this confusion. Right, Your Honor. And in our opening brief, we explained that the CDA requires de novo review. This Court's precedent requires de novo review. I don't think this Court's precedent says that once you've decided that there's no pretext, which I take actually to be equivalent to meaning that there's no pretext, means the decision was about performance, inquiry over about the contracting officer's reasoning. I don't think we've said that. That may be correct, but I don't think we've said that. Well, Your Honor, I'd point you to the McDonnell-Douglas case, where this Court explained that the lower court there looked to the abuse of discretion, arbitrary and capricious standard, without first considering whether there was a performance-based reason. So we know that first, the board has to determine whether there's a performance-based reason for the determination. If that's answered in the affirmative, there was a performance-based reason for the determination, then that's sufficient to sustain the determination. So that last sentence, what establishes that last sentence, that if there was a performance-based reason articulated by the contracting officer, we now stop caring about the contracting officer's reasoning at the time of the decision, not later testimony at the time of the decision, and now we have a completely in-court or in-board de novo evaluation of the reasonable assurance of timely completion. I think the answer to Turner's question is best articulated in the Empire Energy case, where in that case, the board also, and the contractor in appeal, was arguing that the contracting officer didn't undertake the correct analysis. And this court in Empire Energy said, no, there's a performance-based reason, and therefore the contracting officer's analysis, subjective beliefs, and opinions are irrelevant. All the government has to show is that the contractor couldn't perform the duration of the contract by what the board found to be the contract completion date. And so first the board was tasked with looking de novo at whether there was a performance-based reason, and then if there is not a performance-based reason, then the abuse of discretion, arbitrary and capricious standard for bad faith that we've referenced. I think what I'm hearing you saying, and I guess I have in my mind, a fair amount of broader language in pre-Empire Energy decisions about arbitrary and capriciousness being the lens through which one evaluates the contracting officer's decision and the ordinary meaning of arbitrary and capriciousness, I think as is clear from administrative law generally, does actually place considerable weight on the actual reasoning of the contracting officer. I think I hear you saying that Empire Energy kind of narrows the scope of the language used in previous cases to no pretext and performance-based. I think it does so expressly when it says this is not inconsistent with McDonnell-Douglas and prior cases, but what matters under CDA is whether the government showed that the contractor had a performance-based issue that supported the termination. And so I think that Empire Energy did narrow and say the arbitrary and capricious abuse of discretion standard isn't relevant if we have a performance-based reason. And that's consistent with the CDA and with this Court's long-standing precedent. Does that mean you establish the performance-based reason at the outset, or does it sort of emerge as the proceedings are going on before the Board or the Court of Federal Claims? Well, I imagine, Your Honor, because it is a de novo review, it would be established over the course of the hearing that's happening before the Board, which happened in this case, a 12-day hearing that was all about the performance or lack thereof of the contractor. And the problem with the Board... So you're saying, excuse me for jumping in on you, but what you're saying is that you have a Board proceeding or a Court proceeding, and the Court determines or the Board determines at the end of the testimony and the review of the documents that this was a legitimate performance-based reasoning. Hence, we don't go the arbitrary capricious route. We just look at was there a reasonable basis situation. That's correct, Your Honor. And what I think is important to remember here is before the CDA, when we were in the Wunderlich era and the Act, we only looked at the contracting officer decision for abuse of discretion and arbitrary capriciousness, right? We looked directly at that at the outset. And as this Court explained in Wilner, the CDA changed that. Post-CDA, we don't just look at whether the contracting officer was acting in bad faith or the termination was a pretextual reason for some other. We actually start at the performance of the contractor. Second, I have just one question, sort of a technical question. You're asking that we vacate the decision of the Board and remand to the Board. I assume that based on what you're saying, you're not asking for a new trial. You're asking the Board to go back and look at the record that presently exists, the documents, the testimony, and apply what you say is the correct approach. Is that correct? Correct, Your Honor. And the correct approach here, which is so far contrary to what the Board did, is to determine the contract completion date and then make a determination as to whether there was a reasonable likelihood that this contractor could have met that date, an analysis that the Board expressly declined to make. And I would point, Your Honors, to Appendix 7. Can I double-check something? Sure. Is there a second reasonableness layer to the, or just the one that you articulated, namely a reasonable likelihood of timely completion with a proper contract date, or is it that a hypothetical reasonable contracting officer could reasonably conclude that there is no reasonable likelihood of timely completion? Which of those two things is it? I think it was originally articulated in the latter example, the double reasonable, but Empire Energy didn't actually put that double reasonable. It actually just said that the government must show that the contractor could not have performed in the time that was set by the Board or the Court. Could not have. Exactly. Then what I hear and what we've been talking about, it's entirely a matter of the procedure and how it was reviewed. You're not saying that there was anything conspicuously, so conspicuously incorrect that as a matter of law it can't stand. You're saying it needs to be reviewed as a matter of procedure. In a different way. The Board needs to redo its analysis to comply with this Court's procedure, but there are several ways that the Board's analysis runs far contrary to this Court's longstanding precedent. For example, the Board relied on the contracting officer's failure to review, purported failure to review FAR factors. That is directly contrary to this Court's opinion in DCX, where this Court said that a contracting officer's failure to review these specific FAR factors is not a reason to overturn a termination. This Board's opinion is also directly contrary to this Court's opinion in ACE Corporation, where this Court explained that if the contractor doesn't show reasonable assurances to the agency that it can perform the contract, that is a sufficient reason to sustain the termination. The Board's opinion is also contrary. You didn't rely on ACE in your blue brief? I believe we did, Your Honor. AEC, it's called Danzig. Oh, the Atomic Energy Commission? Danzig v. AEC. Oh. And it's in our section, I believe on page 26, about repudiation. Not the lead name. Yeah, sorry about that. Okay. Do you want to save your rebuttal time? Sure. Thank you, Your Honor. Okay. Mr. Wunderlich. May it please the Court, Your Honor. David Wunderlich on behalf of the Apelli Eagle Peak Rock and Paving, Inc. And Eagle Peak very much appreciates the Court's time this morning as we attempt to come to the end of the line of a saga that has now entered its seventh year since the contracting officer terminated this construction contract for default. And it's Eagle Peak's belief the Civilian Board of Contract Appeals correctly held that that termination was improper and converted it to a termination for the convenience of the government. We, in our brief, focused on five separate factors on which the Court could affirm that decision. But I'm going to focus only on two here today. The first being the fact that we are faced with a complete straw man argument of what the Civilian Board of Contract Appeals actually held. The Board held that the government failed to carry its burden of proof. So let me just, as I read the Board opinion and I went through, and it's a mercifully short Board opinion as these things go, but virtually every paragraph one can write in the right-hand margin is the Board discussing abuse of discretion or is the Board making a de novo finding. And most of the paragraphs are about abuse of discretion. There's one paragraph that maybe if the analysis is redone on remand, if that's the way we were to go, maybe that's going to be enough for you to win.  And then there's a couple of paragraphs, one maybe most of all, that sounds like de novo. And then at the very end, the Board says, by the way, we're not actually deciding the question of reasonable likelihood of timely completion. So I don't see that you can say it's a straw man to accuse the Board of very substantially discussing abuse of discretion of what the contracting officer reasoned. The Board's holding is as clear as it could be. They said the question is whether FHWA satisfied its burden that there was no reasonable likelihood of Eagle Peak's timely performance by October 5th, 2018, the contract completion date. We conclude that the FHWA failed to meet that burden. That is the Board's holding. And that holding is based on a de novo review of the evidence, a substantial amount of evidence, as Ms. Akers pointed out, 12 days of hearing. Judge Russell visited the project site. There's over 3,000 pages of testimony, nearly 5,000 exhibits in the Rule 4 record. And the Board analyzed that thoroughly and found that the government did not carry its burden of proof. They did not establish that performance-based reason. The performance-based reason is Lisbon and its progeny. That is the notion that is there no reasonable likelihood of timely completion. If you don't have that, you don't have a performance-based reason for termination. And that is what the government established. Because the government did not carry its burden of proof, because they did not establish no reasonable likelihood of timely completion, the Board's analysis ends there. That was the only holding that they needed to make, is the holding that the government did not satisfy its burden of proof. Just help me out. The sentence that you started with, where do I find that? I believe that's page 11. I'm sorry, it's page 11. And that's right at the beginning of the discussion section. And then the Board goes on repeatedly to talk about the contracting officer's reasoning. And in the penultimate paragraph, because we find that, I'm sorry, based on the evidence presented, we cannot find that the contracting officer acted fairly and reasonably in terminating Eagle Peak for default after paragraph after paragraph of criticizing the contracting officer's reasoning. Do you disagree with Ms. Akers that the contracting officer's reasoning is really beside the point in a de novo proceeding? I don't disagree that her reasoning is beside the point, but the government has taken an overly expansive view of what constitutes that, quote, subjective belief on the part of the contracting officer. This court in McDonnell-Douglas 12 was very clear that... Right, but Eagle Empire came after that. Correct. And rather pointedly reconstructed the language of that passage in the McDonnell-Douglas 12. That's the 323 F3rd, right? Yes. Right. And Empire Energy is completely distinguishable because in that case, the government at the hearing proved that there was no reasonable likelihood of termination. That was why that decision was sustained, and that's completely missing here. Here, the board affirmatively found that Eagle Peak was ready, willing, and capable of completing time. If you're right about that, and if we were to have doubts about how much of the board's opinion may have gone off on what ultimately is a tangent, namely the quality of the contracting officer's reasoning, why isn't the right course to vacate, remand, and you can argue to the board, never mind all of that criticism of the contracting officer's decision, just look at the evidence. Did the government prove the termination for default standard, which is mostly here concerned or maybe even entirely here concerned with likelihood of timely completion? You should find the government did not prove that and get back to the same result. Because I believe pretty firmly that the board did undertake that analysis. As they pointed out, there was undisputed evidence in the record that Eagle Peak had the resources and capability to timely complete this contract. When that was not disputed, the government failed to carry their burden. A remand is going to lead you back to the same place because the board has already undertaken that analysis. They found the testimony of Eagle Peak's scheduling expert to be persuasive that there was adequate progress being made in the first season. That's a finding of fact that goes toward the government's failure to carry its burden of proof. If we were to remand, as I said, this is just going to end up back in the same place because the board has already undertaken the analysis that's necessary. And to the extent the board is mentioning discretion, it's using it in the context of what objectively did the contracting officer look at in making the termination decision. It's hard to separate this. Why does it matter under Empire Energy what the contracting officer looked at? I thought the whole point of de novo is that once the claim is put into the Court of Federal Claims or the board, contracting officer's decision is no longer a part of the analysis. Now the question is, what is the evidence put in before the tribute? Because it's impossible to separate those two in many instances. Here in the sense, the evidence of Eagle Peak's progress in the first season and ability to complete and what the contracting officer looked at, they're one and the same. The fact that there's evidence in the record that Eagle Peak was, as the board put it, ready, willing, and capable to timely complete is basically the same thing as what the contracting officer didn't look at. It's very difficult to separate those two. Is the government put in before the board as evidence additional facts, analyses that went to the timely completion issue, that went beyond what the contracting officer herself looked at? They certainly did, and the board found them unpersuasive. The board was persuaded by the schedules that Eagle Peak submitted that had an extensive narrative that detailed how they were going to complete this work, the communications that this court has instructed us to look at as to what constitutes objective evidence. Those communications were Eagle Peak's assurances. We are going to bring our forces. We're marshalling everybody we have, and we are going to throw it at this project. And then on January 25th, 2017, they put in a schedule that lays that out in extensive detail, 50-plus pages of the resources, equipment, et cetera, that Eagle Peak is going to be bringing to bear on this project. Nobody from the government ever looks at that. And do you know who did look at it? The board. The board looked at it and said, yes, we find this persuasive. This is more persuasive than anything that the government has put on, and therefore the government has failed to carry its burden. Well, you recall the discussion mainly between Judge Toronto and Miss Akers about the arbitrary and capricious point. It doesn't seem to me, do you contend that the government's action was arbitrary and capricious here? I mean, it seems to me perhaps when all is said and done, the board, if it looks at it again, will say, the contracting officer, we uphold the default or we don't. But I don't think, I don't see arbitrary and capricious action, pretextual action here, do you? Well, you're... You would say she got it wrong, but would you say that there was any malevolent or pretextual intent here? I don't think so. To be clear, Your Honor, the McDonnell-Douglas factors, let me put this out in our brief, as to how those are not the exclusive consideration of what constitutes an abuse of discretion. And abuse of discretion, arbitrary and capricious, those are the same thing. And I think you can find that here because it can be found in circumstances where it is something other than a pretext. No, I understand that, but I mean, do you really feel that there was, again, whether the contracting officer came to the right or wrong decision, based on what I've seen in the case, it doesn't look to me like we have some sort of malevolent intent here or pretextual action that you've seen referred to in some of the other cases. It's not necessarily a pretext. It is just the notion that there is not a reasonable contract-related nexus. And in McDonnell-Douglas 10, there was that nexus. The contractor said, we are not going to be complete by the contract completion date. Again, that's absent here. Even the cases further back, Schlesinger, John A. Johnson, Darwin, even though the agencies in those cases were able to articulate a contractual hook for the termination, but the board overturned them anyway because they found a pretext in those cases. There is no contract-related basis here. There's no pretext here. I mean, it doesn't appear from what, I mean, you're more familiar with the record than I am, but it doesn't appear. I see one could say that the termination for default was incorrect because there was, the government didn't establish no reasonable likelihood of completion. Fair enough. But that's different from saying the government acted out of some kind of malevolent pretextual intent. The government can get it wrong but not be malevolent is what I'm saying. And it seems to me that that's more the situation we have here. And I would argue, Your Honor, you absolutely pointed out that the key fact in this is that we're operating in a hypothetical world here in the sense that we only get to this analysis if the government carries its burden of proof, which the board was very clear after a thorough review of the evidence that they did not do so. But again, I would argue strongly that the abuse of discretion, arbitrary, and capricious standard isn't limited to, as you put it, the malevolent intent, the pretextual cases. It can be a wrong decision reached in a, it can be satisfied on a negligence standard as opposed to a malevolent one if the contracting officer doesn't do the level of analysis that's required under the FAR. What would be a case that actually so held in the sense that there was no pretext but the contracting officer's decision was, notwithstanding that it referred to deficiency of performance, was nevertheless, in your view, arbitrary and capricious and do we have a case that said, and therefore without any additional de novo on new evidence review, we change the termination for default into a termination for convenience? And I would point, Your Honor, at the end of my time here, but I would point, Your Honor, to pages 37 and 38 of our brief in which we cite a host of decisions from the Boards of Contract Appeals and the Court of Federal Claims that... What about from this Court? Do not have any from this Court. Because I think that Darwin is part of the whole Schlesinger line where it's all just basically pretext. That's correct. And I thank you, Your Honor, respectfully request that the Court affirm the decision of the Board of Contract Appeals. Any more questions for counsel? Anything else for counsel? Thank you. Just a few points, Your Honors. First, I think it's important to look at Appendix 17 that Judge Toronto pointed out where the Board said that it could not sustain the termination because the contracting officer did not act fairly and reasonably. That language, that conclusion and determination cannot be reconciled with this Court's precedent that says a contracting officer's subjective beliefs, opinion, analysis, consideration of the far factors is irrelevant in its determination. Eagle Peak is arguing here that there was a thorough review of the factual performance-based reasons, and respectfully, Your Honors, that is preposterous. What happened in this Board opinion is critique after critique of the contracting officer's analysis. That is outside the review of the Board's determination. So let me just ask this. So it seems to me there is a logical possibility, and the question is going to be is this what happened here, that if the government puts on kind of two kinds of evidence, or there are two kinds of evidence in the de novo proceeding. One is look at all the stuff that the contracting officer did and said, and then other stuff, new expert or something comes in and says, even though the contracting officer didn't mention it, here are some other reasons why Eagle Peak could not have finished on time. Now let's suppose there isn't actually much in this new evidence bucket. Then it's perfectly sensible for the Board or the Court of Federal Claims in a 1491 case to talk about the sufficiency of what the contracting officer had to say. Why is that not an accurate description of this? Well, respectfully, on two reasons, Your Honor. No, it's not appropriate for the Board to look at what the contracting officer did. It's to look at the facts again and anew on a clean slate and to say this is what happened. These are the performance issues or not. In this case, for example, things that the contracting officer didn't discuss, the government's independent scheduling analysis that it put forward. Eagle Peak's own schedule that showed it would not complete by the contract completion date. That is proof that there is no reasonable likelihood of timely completion. Its own schedule showed beyond timely completion. The Board is permitted to look at any basis to sustain the termination, not only just those considered by the contracting officer. The Board here really abdicated its responsibility in full by looking at the performance-based reasons, by looking at all of the evidence and considering it and analyzing all of the evidence that the government put forward as to the performance-based reasons. Instead, what it did was it substituted that proper analysis under this Court's longstanding precedent with improper critiques of the contracting officer's final decision, which plays no part in a de novo review as this Court has explained time and time again. Thank you. Anything else for counsel? Any more questions for counsel? Thank you. Thank you both. The case is taken under submission.